### Mutual Wheel Co. v. Walter J. Mosher.

1. ORDINARY CARE—*Lack of, Will Bar a Recovery.*—Where a party was not, at the time of his injury, in the exercise of ordinary care for his own safety, he is not entitled to recovery.

Action in Case, for personal injuries. Appeal from the Circuit Court of Rock Island County; the Hon. FRANK RAMSEY, Judge, presiding. Heard in this court at the October term, 1899. Reversed, with a finding of facts. Opinion filed October 12, 1899. Rehearing denied. Opinion modified and refiled April 11, 1900.

SWEENEY & WALKER, attorneys for appellant.

J. T. KENWORTHY and S. R. KENWORTHY, attorneys for appellee.

MR. JUSTICE HIGBEE delivered the opinion of the court.

This was a suit brought by appellee against appellant to recover damages for personal injuries alleged to have been received by him in falling through a hole from which a trap door had been removed, in the engine room of the latter, while attending to his duties as night watchman.

Appellant was, at the time of the accident and had been for some time prior thereto, operating a factory for the purpose of manufacturing wheels. Prior to the time of the accident, appellee had been in the employment of appel-

lant in several different capacities, with indifferent success, and on May 1, 1895, after he had been out of employment for some time, appellant employed him as night watchman, which position he was filling at the time of the accident, which occurred about five o'clock on Monday morning, March 23, 1896.

As night watchman he went on duty at six o'clock in the evening and remained until seven o'clock in the morning. It was his duty to see that everything was all right around the shop with reference to fire and trespassers; to close doors and windows which may have been left open; to go through the building every hour, from six o'clock in the evening until five o'clock in the morning, and to take care of the place in a general way. He was required to sweep the engine room every night, and there being no special time designated for it, it was his custom to do this in the morning, after he had made his last trip through the building.

The engine room was forty-seven feet long, east and west, and fifteen feet wide, and was lighted by eight windows, two in the east end of the room, two in the west and four in the south. In the center of the room, at the west end, was the engine, and south of it, extending a little further east, was the wheel pit, which was protected by a box on the east and south. Directly east of the wheel was the hole in the floor through which defendant fell. This hole was fourteen and one-half by twenty-two inches, and was usually covered by a trap door of pine flooring. Some six inches east of the trap door, and about thirty-one inches apart, were two posts, six by eight inches in size, which extended from the floor to the ceiling, and supported an "idler" for the belt operated by the fly wheel. This belt extended from the wheel up to the "idler," at an angle of forty-five degrees, and was four feet six inches above the floor at the west side of the trap door and five feet six inches at the west side of the posts. Appellee made his headquarters in this room, generally sitting at the east end of the room, but sometimes occupying a chair near the north one of the two posts. At the time the accident is

alleged to have occurred, appellee states that he had completed his rounds for the night, and having set his lantern near the middle of the floor, was sweeping the engine room; that in doing this he was walking backwards between the two posts, when he stepped through the hole and struck his back on the edge of the opening, and received injuries which permanently disabled him; that there was no one present at the time of the accident; that he drew himself out of the hole and afterward went home; that he suffered pain constantly that day, but did not see a physician until the following day, when he called upon one at his office. This suit was brought on the 25th day of July, 1896, and trial was had in March, 1899. The jury gave a verdict in favor of appellee for $4,716.66⅔; and a motion for a new trial having been overruled, judgment was entered for that amount.

The principal reason assigned by appellant for the reversal of the judgment is, that the verdict in this case was not sustained by the evidence. The record is quite voluminous, and a large portion of the evidence contained in it was devoted to the question whether or not appellee was guilty of contributory negligence in bringing about the accident complained of. Appellee testified that he never knew there was a trap door at the place in question, and that he had swept directly over the place on the Saturday morning prior to the accident. It appeared, however, that the door had been removed on Friday afternoon by the assistant engineer, who went below the floor, first to shut off the water pipes, and a second time to raise the valve and turn the water on again. When he came from under the floor a second time it was a little after six o'clock, and at that time appellee was in the engine room. Four witnesses testify that they saw the door off on the occasions when they visited the engine room from the time it was first removed on Friday afternoon until the time of the accident on the following Monday morning. If such was the fact it is hardly probable that plaintiff, who went in there before dark and came away after daylight, during the time the door was off, could have failed to notice it, and it would have been abso-

Mutual Wheel Co. v. Mosher.

lutely impossible for him to have swept over the spot on Saturday morning without seeing the hole.

It also appeared from the evidence of two witnesses that on other occasions they went into and came out of the hole while appellee was present in the room. The greater weight of the proof showed that appellee knew of the existence of the trap door. It also showed that the door was open and the hole exposed from Friday afternoon until the time of the accident. This was evidently the view taken by the jury, as they found specially that the trap door or hole in question, when open was in plain view, and also that the trap door was off and the hole exposed to view Friday afternoon and Saturday and Sunday before the accident.

It also appeared from a preponderance of the evidence that the trap door, during the time the hole was open was lying east of it, right between the two upright posts. If such were the case appellee could not have swept between the posts without noticing it and could not have walked backward without stepping upon the cover and thereby being notified of danger.

Without going further into details of the proof, it is sufficient to say that we are of opinion that it appears from a clear preponderance of the evidence that appellee, at the time of the alleged accident knew of the trap door, and was not at the time in the exercise of ordinary care for his own safety. Under such circumstances he was not entitled to recover a judgment against appellant for damages.

The judgment of the court below will therefore be reversed, but as in our opinion the evidence was not sufficient to sustain a judgment in favor of appellee, the cause will not be remanded.

**Finding of Facts,** to be incorporated in the judgment.

We find that appellee knew of the existence of the trap door mentioned in the evidence, prior to the occurrence of the accident through which he claims to have received the injuries complained of, and that at the time of such accident he was not in the exercise of ordinary care for his own safety.